[S. F. No. 1572. In Bank.—October 1, 1901.]

# RUDOLPH J. TAUSSIG et al., Respondents, v. BODE & HASLETT, Appellant.

Bailment—Storage of Spirits in Warehouse—Failure to Redeliver—Prima Facie Case—Burden of Proof—Excuse of Failure.—Where barrels of spirits were stored in a warehouse, proof of the deposit, and of failure of the bailee to redeliver in accordance with the terms of the contract, makes a *prima facie* case for the bailor, and the burden of proof is upon the bailee to excuse the failure to redeliver.

Id.—Leakage—Shifting of Burden.—Where the bailee shows a return of the barrels stored, and that the contents have been lost by leakage, the burden shifts upon the bailor to prove affirmatively that the leakage was caused by the fault of the bailee.

Id.—Stipulations Limiting Liability of Warehousemen—Public Policy.—There is no public policy to be infringed by stipulations limiting the liability of warehousemen for loss or deterioration caused by the inherent qualities of the articles stored, or by defects in the vessels containing them, not caused by fault of the warehousemen.

Id.—Warehouse Receipt—Printed Stipulation—Leakage at Owner's Risk—Failure of Warehousemen to Inspect.—Where the warehouse receipt contained a printed stipulation that leakage was to be at the owner's risk, the owner of the spirits stored is conclusively chargeable with knowledge thereof, and is bound thereby. In view of such stipulation, it was not actionable negligence for the warehousemen merely to fail to inspect for leakage the barrels of spirits, though they were stored two tiers high, with no passageway between the tiers.

Id.—Duty of Bailor to Inspect—Mode of Piling Barrels.—Under the warehouse receipt, it was the duty of the bailor, and not of the bailee, to inspect the barrels for leakage. For the purpose of such inspection, he could have required a removal of the barrels, or a different mode of piling them. In the absence of any attempt of the bailor at inspection, the mode of the piling of the barrels by the bailee, which does not appear to have been otherwise than customary, is immaterial, even if it be assumed to be improper, as preventing convenient inspection.

Id.—Negligence—Erroneous Instructions.—Instructions to the effect that even if the leakage was due to the original negligence of the plaintiffs in storing the spirits in leaky casks, the defendant was nevertheless liable for the loss, if by ordinary care he could have discovered and cured the defect, and prevented the loss by leakage or shrinkage of the barrels, from defective cooperage, and allowing to the defendant no benefit whatever from the stipulation against loss from leakage, were erroneous, and require a reversal of the judgment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   William R. Daingerfield, Judge.   ·

The facts are stated in the opinion of the court.

George T. Wright, for Appellant.

Where the defendant has accounted for loss of the property stored, the burden of proving that the leakage was the result of defendant's negligence was upon the plaintiff. (*Wilson* v. *Southern Pacific Ry. Co.*, 62 Cal. 164; *Claflin* v. *Meyer*, 75 N. Y. 262;[1] *Schmidt* v. *Blood*, 9 Wend. 271;[2] 28· Am. & Eng. Ency. of Law, 648, 649, 650; *Cooper* v. *Barton*, 3 Camp. 5, note.) No recovery can be had for loss resulting from defective cooperage. (*Nelson* v. *Stevenson*, 5 Duer,·539; *Hudson* v. *Paxendale*, 2 Halst. & N. 575, 582.)   The stipulation in the warehouse receipt was valid, and binding upon the plaintiff, and made the leakage at his risk, which is not shown to have been caused by the defendant's fault.   (Story on Bailments, 9th ed., sec. 32; Schouler on Bailments and Carriers, 2d ed., sec. 20; 2 Am. & Eng. Ency. of Law, 51, note 5; *Mariner* v. *Smith*, 5 Heisk. 203; *Dimmick* v. *Milwaukee etc. Ry. Co.*, 18 Wis. 471; *Steele* v. *Townsend*, 37 Ala. 247;[3] *Lake* v. *Hurd*, 38 Conn. 536; *Robinson* v. *Merchants' Dispatch Transportation Co.*, 45 Iowa, 470; *Adams Express Co.* v. *Sharpless*, 77 Pa. St. 516; *Strohn* v. *Detroit etc. R. R. Co.*, 21 Wis. 554.[4])   The instructions were erroneous. If plaintiffs were negligent in having their spirits stored in defective casks, defendants cannnot be made liable, unless they willfully or by wanton negligence directly caused the loss. (Beach on Contributory Negligence, 33, 43, 45, 76, 77, 78, 82; *Gay* v. *Winter*, 34 Cal. 153; *Maumus* v. *Champion*, 40 Cal. 121; *Robinson* v. *Western Pacific R. R. Co.*, 48 Cal. 424; *Fleming* v. *Western Pacific R. R. Co.*, 49 Cal. 253; *Hearne* v. *Southern Pacific R. R. Co.*, 50 Cal. 482; *Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 326; *Murphy* v. *Deane*, 101 Mass. 455;[5] *Birge* v. *Gardiner*, 19 Conn. 511;[6] *Robinson* v. *Cone*, 22 Vt. 222.[7])

Reinstein & Eisner, and M. S. Eisner, for Respondents.

The plaintiff must prove the alleged loss by defective cooper-

[1] 31 Am. Rep. 467.
[2] 24 Am. Dec. 143.·
[3] 79 Am. Dec. 49.
[4] 94 Am. Dec. 564.
[5] 3 Am. Rep. 390.
[6] 50 Am. Dec. 261.
[7] 54 Am. Dec. 67.

age with reasonable certainty before plaintiff can be required
to show negligence of the defendant. (*Claflin* v. *Meyer*, 75
N. Y. 260;[1] *Williams* v. *New York etc. Ry. Co.*, 56 N. Y. Super.
Ct. 508; 4 N. Y. Supp. 834; *Arent* v. *Squire*, 1 Daly, 347; *Cox*
v. *O'Riley*, 4 Ind. 368.[2]) A warehouseman who pays no atten-
tion to discover what is going on within his warehouse in rela-
tion to the goods intrusted to him is guilty of gross negligence.
(*Chenowith* v. *Dickenson*, 8 B. Mon. 156.) A bailee must use
care and watchfulness, necessary to preserve the article bailed.
(*Hatchett* v. *Gibson*, 13 Ala. 587.) A stipulation limiting lia-
bility cannot excuse a bailee's negligence. (*Lancaster County
National Bank* v. *Smith*, 62 Pa. St. 47; *Collins* v. *Burns*, 63
N. Y. 1; *Canfield* v. *Baltimore etc. Ry. Co.*, 93 N. Y. 532;[3]
*Blumenthal* v. *Brainerd*, 38 Vt. 402;[4] *Holtzclaw* v. *Duff*, 27 Mo.
392.) The bailee must prove that he was not at fault, and
used proper precautions. (*Jackson* v. *Sacramento V. R. R. Co.*,
23 Cal. 269; *Wilson* v. *Southern Pac. R. R. Co.*, 62 Cal. 164;
*Wilson* v. *California Cent. R. R. Co.*, 94 Cal. 171; *Claflin* v.
*Meyer*, 75 N. Y. 260;[5] *Coleman* v. *Livingston*, 36 N. Y. Super.
Ct. 32; *Golden* v. *Romer*, 20 Hun, 438; *Schmidt* v. *Blood*, 9
Wend. 268; *Reed* v. *Crowe*, 13 Daly, 164; *Arent* v. *Squire*, 1
Daly, 347; *Burnell* v. *New York Cent. Ry. Co.*, 45 N. Y. 184;[6]
*Fairfax* v. *New York Cent. etc. R. R. Co.*, 67 N. Y. 11; *Schwerin*
v. *McKie*, 51 N. Y. 180;[7] *Woodruff* v. *Painter*, 150 Pa. St. 91;[8]
*Clark* v. *Spence*, 10 Watts, 335; *Cox* v. *O'Riley*, 4 Ind. 368;[9]
*Boies* v. *Hartford etc. R. R. Co.*, 37 Conn. 272;[10] *Lynch* v. *Klu-
ber*, 46 N. Y. Supp. 428; 20 Misc. Rep. 601.) A warehouse-
man is liable for leakage or loss resulting from want of ordinary
care to preserve and protect the property. (*Baltimore etc.
R. R. Co.* v. *Schumacher*, 29 Ind. 168;[11] *Chenowith* v. *Dickin-
son*, 8 B. Mon. 156.) If the negligence of the plaintiff was a
remote cause, and the defendant might have avoided the loss
by ordinary care, the defendant must make the loss good.
(Beach on Contributory Negligence, sec. 25, p. 31; *Esrey* v.
*Southern Pacific Co.*, 103 Cal. 545; *Fox* v. *Oakland etc. Ry. Co.*,
118 Cal. 55, 62.[12])

[1] 31 Am. Rep. 467.

[2] 58 Am. Dec. 633.

[3] 45 Am. Rep. 268.

[4] 91 Am. Dec. 349.

[5] 31 Am. Rep. 467.

[6] 6 Am. Rep. 61.

[7] 10 Am. Rep. 581.

[8] 30 Am. St. Rep. 786.

[9] 58 Am. Dec. 633.

[10] 9 Am. Rep. 347.

[11] 96 Am. Dec. 510.

[12] 62 Am. St. Rep. 216.

BEATTY, C. J.—The defendant is proprietor of a bonded warehouse in the city of San Francisco. On the 20th of January, 1896, it received from the plaintiffs, and stored in its warehouse, sixty-four barrels of spirits. About the 4th of March, following, it discovered that some of the barrels were leaking, and immediately notified the plaintiffs, who, upon examination, found that eight barrels showed excessive outage. One barrel was practically empty, three or four leaking badly, and the others to some extent. The total amount of loss, over and above the ordinary allowance for evaporation, was 181½ gallons, equal to 225½ proof gallons, of the value of $434.50. The plaintiffs sue to recover that amount, and charge, by the first count of their complaint, that the loss was due to leakage caused by the careless, negligent, and improper handling and storage of the barrels by the defendant. In a second count they simply allege a delivery of the 64 barrels to defendant on a contract of storage, and a failure and refusal of the defendant to redeliver on their demand 181½ gallons of the amount stored. The cause was tried by a jury, upon evidence relating almost exclusively to the first count, and the instructions requested by the parties and given or refused by the court bore mainly upon the measure of defendant's responsibility for a loss caused by leakage from the barrels during the time they remained on storage.

The jury brought in a verdict for the plaintiffs, and the defendant appeals from the judgment and from an order denying a new trial.

Some question is made as to the sufficiency of the evidence to sustain the verdict, and with reference to this point there is a controversy as to the burden of proof, but as to this little need be said. We agree with respondents, that in a case of this character, proof of the deposit and of failure of the bailee to redeliver in accordance with the terms of the contract, makes a *prima facie* case, and that the burden is upon the warehouseman to excuse the failure to redeliver; but we also agree with the appellant, that when, as in this instance, he shows a return of the packages stored, and that the contents have been lost by leakage, the burden shifts to the plaintiff to prove affirmatively that the leakage was caused by the fault of the bailee. This was the principle decided in *Wilson v. Southern Pacific R. R. Co.*, 62 Cal. 164, and it is entirely reasonable and just. But even in this view there was evidence sufficient to sustain the verdict for plaintiffs, if the instructions of

the court correctly stated the law. Not that the defendant was shown to have stored or handled the casks improperly, which is one of the things that the plaintiffs undertook to prove, but only because there was a failure on the part of defendant, according to the rule laid down by the court, to make sufficiently frequent and careful inspection of the casks for the purpose of determining whether they were leaking.

There was an effort to prove that the warehouse was improperly constructed or badly arranged, so that the casks were exposed to drafts, the effect of north winds, etc., causing shrinkage of the staves. But upon this point we think there was a failure of proof, while on the other hand there was very strong evidence that the casks that leaked were faultily constructed. And besides, the plaintiffs knew, or had the means of knowing, all about the arrangement and situation of the warehouse, whether and to what extent it was exposed to drafts or north winds, how casks were ordinarily piled and arranged on the floor, and in what position, with reference to the doors of the warehouse, these sixty-four casks were placed.

It was shown, however, that the casks were piled in a double tier,—chime to chime,—and two tiers high, with no passageway between, so that one head of each cask was concealed from view as they lay, and so that they could leak at the covered ends without discovery.

Under the instructions of the court, the jury were at liberty to find that this was actionable negligence on the part of the defendant, and in view of the extreme weakness of the evidence as to any other fault or negligence of the defendant, we are justified in assuming that the verdict was based wholly upon a finding of negligence in this particular, and, at all events, the verdict cannot be sustained if the jury were erroneously instructed to the prejudice of the defendant in respect to this matter.

Whether it was actionable negligence on the part of the defendant to fail to inspect the casks for the purpose of detecting leakage, depends primarily upon the terms, express or implied, of the contract of storage, construed in the light of the circumstances of its execution. The only circumstances material to be considered in connection with the terms of the contract as contained in the warehouse receipt are, that the plaintiffs had been storing spirits in the defendant's warehouse for several months before these sixty-four casks were stored in January, 1896; that the practice was to have the spirits shipped directly

to the warehouse; that on the arrival of a carload the plaintiffs were notified, and sent their agent to inspect the goods, and especially to see that the cooperage was all right,— to see, in other words, that the casks were in a condition to be safely stored. Both parties were equally well informed as to the volatile nature of spirits, and the danger of loss from leakage and evaporation. On the arrival of these sixty-four casks at the warehouse, the plaintiffs were notified, and, in accordance with their usual practice, sent their agent to inspect the cooperage. Both he and the agents of defendant satisfied themselves that the barrels were in good condition and fit to be stored, and thereupon the defendant issued its receipt, in the following terms: —

GENERAL INTERNAL REVENUE BONDED WAREHOUSE No. 1.

*First District of California.*

No. 121.

BODE & HASLETT, Proprietors.

N.E. cor. Third and King Streets.

SAN FRANCISCO, January 20, 1896.

Received on storage from Louis Taussig and C.

| Distiller and Brand. | Numbers. | No. of Packages. |
|---|---|---|
| American Dist. Co. | 134901/964 | 64 sixty-four bbls. spirits. |

BODE & HASLETT.
W. A. JAMES.

*Parties are reminded that transfers of merchandise are not complete unless made on the books of the warehouse.*

*Non-negotiable.*

*This receipt is given in accordance with the California warehouse laws, as well as the laws of the United States. Loss or damage by fire, the elements, shrinkage, leakage, or natural decay, at owner's risk.*

Counsel for the respective parties differ as to the effect of the notice printed on the face of this receipt, that loss by leakage was at the owner's risk. Respondents claim,—1. That the notice is no part of the contract; and 2. That even if it is treated as a binding stipulation, it could not exempt the appellant from liability for loss by leakage, which, as they contend, might have been discovered and prevented if the casks had been inspected from time to time, or if they had been piled in a single tier, leaving both ends exposed to view. Both of these propositions are controverted by the appellant, and upon their determination the case seems to depend. We think it clear that the notice is a part of the contract. It was printed

plainly on the face of the receipt. The whole paper is extremely brief. It was the duty of respondents to take note of its contents, if they had the opportunity, and their opportunity was ample. The presumption, therefore, is, that they did read it. .Against this presumption there is no evidence, and none, we think, would have been admissible to show that the respondents had failed to do what their duty required them to do. Assuming, then, that they read the receipt, and, whether they did or not, that they are chargeable with knowledge of its contents, they had fair warning that any loss by leakage was at their risk, or in other words, that the appellant declined all responsibility for loss by leakage. Their acceptance of the receipt and storage of the goods with knowledge of this condition made it binding upon them, as one of the terms of the contract. The cases cited by counsel in which it has been held that notices printed or stamped on bills of lading, but not signed by the consignors, do not exempt common carriers from their common-law liability are not in point. They rest upon the peculiar nature of the public duties of common carriers, and the public policy of preventing them from limiting their liability by mere notices not expressly assented to by the shippers. The principle of those decisions is very clearly stated by Mr. Justice Davis, delivering the opinion of the supreme court of the United States in *Michigan Central R. R. Co.* v. *Mineral Springs Mfg. Co.*, 16 Wall., at page 328. The case of warehousemen is entirely different. There is no public policy to be infringed by stipulations limiting their liability for loss or deterioration caused by the inherent qualities of the articles stored, or by defects in the vessels containing them. They are not bound to receive articles offered for storage, and may make such terms as they choose to impose as conditions of their contract. In this case we think that it was clearly one of the terms of appellant's contract that it should not be responsible for loss by leakage. This, of course, would not exempt it from liability for leakage due to its fault, but did exempt it from the duty of watching these casks to detect leakage caused by defects in the casks, or resulting from any cause other than improper handling or storage. If prudence required the casks to be watched or inspected from time to time to see whether they were leaking, that duty devolved upon the respondents, not upon the appellant. And there was nothing to prevent the respondents from making such inspection as often as they

desired. The warehouse was open to them, but, so far as appears, they never sent any person to look after these goods until they were notified by appellant of the leakage discovered by those in charge of its warehouse. This, it seems to us, is an answer to their complaint as to the manner in which the casks were piled, in a double instead of a single tier. There is no satisfactory evidence that such mode of piling was either unusual or improper, but if we assume that it was improper, for the reason that it prevented convenient inspection, in the absence of any attempt at inspection by respondent, upon whom the duty rested, the improper piling of the casks was of no consequence. If they had gone to the warehouse and found themselves unable to make the necessary examination, they could have required the casks to be piled in a single tier, or they could have removed them. But sufficient has been said concerning the case presented by the evidence.

The vital question to be decided is, whether the law was correctly given to the jury in the instructions of the court. Generally, the instructions given were correct, but with regard to the duty of inspection for the discovery of leakage, we think the rule stated by the court was incorrect. One of the instructions was as follows: "The owner of liquids shipped or stored in barrels of any description is charged with the duty of supplying proper packages, especially where the liquid is volatile, such as spirits, and hard to contain or confine in receptacles, and the warehouseman is not responsible for damages arising from any inherent defect in the barrels delivered to him for storage, nor is he responsible if the negligence of the owner occasioned or contributed to the loss. Therefore, if you shall find that the barrels from which the leakage of the spirits took place were of defective construction, and unsuited for storage of spirits, and that such defect occasioned or contributed to the loss of the spirits, then you will find for the defendant. If the plaintiff was negligent originally, or the cooperage originally defective, and the leakage resulting was discovered by the defendant, or could by ordinary care have been discovered, and could have been prevented or cured by defendant, upon such discovery, by the exercise of ordinary care, then the defendant was bound to use such ordinary care in the premises."

By the latter part of this instruction the jury were plainly told that even if the leakage was due to the original negligence of the plaintiffs in storing the spirits in leaky casks, the de-

fendant was nevertheless liable for the loss, if by the exercise of ordinary care the defendant could have discovered and cured the defect, or prevented the loss. In another instruction given at the request of plaintiffs the jury were told, "that if you find from the evidence that the loss of the spirits for which the plaintiffs claim damages in this action was due to leakage or shrinkage while said spirits were in the defendant's custody as a warehouseman, and if you should further find that the defendant could have prevented said leakage or shrinkage by the exercise of ordinary care, and that the defendent failed to exercise such ordinary care in the premises, and that the plaintiffs were damaged thereby, your verdict should be for the plaintiffs for the amount of damage."

And ordinary care was, by another instruction, defined to be that degree of care which a man of ordinary caution and prudence would manifest in looking to his own interests. In short, by the instructions given and refused, the case was left to the jury to be decided upon the proposition that the defendant was responsible for the loss if it had not exercised the same care in watching and guarding against leakage as the owners of the property should themselves have exercised if the goods had been in their own store, and the defendant was allowed no advantage whatever from its stipulation against loss from leakage.

This, we think, was error. In view of the contract, it was the duty of respondents, and not the duty of the appellant, to guard against latent defects in the casks, and against the effects of shrinkage. They knew, as well as the defendant, the danger of loss from these causes, and the means of guarding against it. The defendant had declined that risk, and it rested upon them to take the necessary precautions, in view of the danger.

The judgment and order of the superior court are reversed.

Temple, J., and Harrison, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of reversal. I also concur in the opinion of the chief justice, except so far as it might be construed to intimate that the evidence showed any negligence whatever on the part of appellant. In my opinion, the respondents would not have been entitled to recover, under the contract, and upon the evidence, if the instructions had been entirely free from error.