[Civ. No. 3534.   First Appellate District, Division Two.—February 23, 1921.]

FRANK E. CUNNINGHAM, Respondent, v. INTERNATIONAL COMMITTEE OF YOUNG MEN'S CHRISTIAN ASSOCIATIONS (a Corporation), Appellant.

[1] BAILMENT—RECEIPT FOR STORED ARTICLE—PRINTED STIPULATION— OWNER'S RISK.—Where a check for a suitcase left for storage with a branch of the Young Men's Christian Association contained a provision that the checked article was left with the association at the owner's risk subject to storage rates and rules and its disposition when six months' storage was due and unpaid, the owner was charged with notice of such provision and the association was thereby exempted from liability for the loss of the article.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Bernard J. Flood, Judge. Reversed.

The facts are stated in the opinion of the court.

T. G. Crothers, E. L. Chloupek and C. A. S. Frost for Appellant.

Hugo K. Asher and Philip S. Ehrlich for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment upon a verdict against it for $500 in an action in which the plaintiff sought to recover $931, the alleged value of a suitcase and contents left with the defendant in storage. The testimony showed that on or about November 15, 1918 (when it is alleged the suitcase was checked with the defendant), the plaintiff was an enlisted man in the United States navy. He claims to have checked his suitcase with the army and navy branch of the Y. M. C. A. at 266 Embarcadero, San Francisco, and this claim is sustained by his own testimony and by a paper check produced by him at the trial, bearing a number and, among other things, the printed words: "The article checked on this check is left with the Association at owner's risk subject to storage rates and rules, and may be disposed of when storage is due six months." When plaintiff presented his check to secure the return of his suitcase it could not be found, and defendant refused to compensate plaintiff for the loss thereof. The suitcase, according to the testimony, was an "accordeon pleated" or extension leather suitcase, containing everything owned by the plaintiff and collected by him during several years of his foreign travels with the United States navy.

Defendant answered that it was a charitable corporation existing for the purpose of establishing and assisting Young Men's Christian Associations, and to promote the spiritual, intellectual, physical, and moral well-being of young men in accordance with the aims and methods of Young Men's Christian Associations, and that it was not organized and did not exist for the purpose of profit; that it maintained in San Francisco, a branch Young Men's Christian Association for enlisted men of the army and navy of the United States, generally known as the "Army and Navy Young Men's Christian Association"; that it employed various clerks and employees to manage and control said branch association; that defendant used due diligence in the selection of those said clerks and employees, to see that each of them was honest and competent to perform his respective duties; denied any knowledge of plaintiff's ever having had or checked the suitcase and contents with defendant as alleged, and on that ground denied that plaintiff delivered said suitcase and contents to

defendant or left same with defendant. Defendant also alleged that if plaintiff checked for storage, delivered to or left with defendant the articles mentioned, same were so left with defendant at the risk of plaintiff; also, that if deposited, as alleged by plaintiff, said chattels had been lost, destroyed, or stolen before demand, and without carelessness, negligence, or fault of defendant; also, that in the event said goods were checked with defendant, defendant used due care and diligence for the preservation thereof, and employed proper agents and employees to care for and preserve the same. Defendant also answered that if it receive said goods or chattels for storage, they were so received for the accommodation of plaintiff, not for hire or reward or profit to defendant, but as a part of defendant's charitable work.

At the close of the testimony, counsel requested the court to direct a verdict for the defendant upon the ground that the facts bring the case within the operation of the rule laid down in the case of *Thomas* v. *German General Ben. Society,* 168 Cal. 188, [141 Pac. 1186], which is stated to be: Where one accepts the benefit of a public or a private charity, he exempts by implied contract the benefactor from liability for the negligence of its servants in administering the charity, if the benefactor has used due care in the selection of its servants. The motion was made upon the further ground that it appears without conflict that plaintiff received from the defendant at the time of the alleged deposit of said suitcase and contents a tag bearing in plain writing the statement, "The article checked on this check is left with the Association at owner's risk . . . "; that he had plenty opportunity to take note of such statement, and it was his duty to do so, and he is presumed to have done so, no evidence to the contrary being offered or admissible; and that plaintiff is held, therefore, to have assented and agreed to the terms and conditions of said printed statement.

With reference to the first ground of this motion, appellant contends that the facts proven establish, as a matter of law, the claim that the defendant was a "charitable corporation" within the language of the decisions defining such corporations. In this we are inclined to agree with the appellant. Furthermore, plaintiff, in availing himself

of the checking facilities of the defendant, placed himself in the status of "one who accepts the benefit of a charity" under the ruling in *Burdell* v. *St. Luke's Hospital,* 37 Cal. App. 312, [173 Pac. 1008]. The only other question in connection with the rule of law relied upon in this ground of defendant's motion was whether or not the defendant had used due care in the selection of its servants employed in administering its charity. Defendant offered considerable evidence as to its method of checking suitcases and other articles, and of the precautions taken by it to avoid error. No evidence, however, was offered by either party upon the question of whether or not defendant had used due care or diligence in the selection of its servants, but the defendant relied upon the presumption of the Code of Civil Procedure, that it is presumed to have taken ordinary care of its own concerns, and asked the court to give an instruction applying this presumption to the selection of defendant's servants. The instruction was refused. Defendant contends that in the absence of evidence to the contrary, this presumption was sufficient to decide the question in favor of. defendant. [1] We need not decide this matter here. It becomes immaterial to a determination of this appeal, because, regardless of whether or not the defendant was exempted from liability by implied contract with the plaintiff, we think it was exempted from such liability by the express terms of the contract introduced in evidence by the plaintiff in support of his case and to which he is presumed to have assented. This is the point raised in the trial court by defendant's second ground of his motion for a directed verdict.

A great number of contracts are made by the delivery by one of the contracting parties to the other of a document in a common form, stating the terms by which the person delivering it will enter into the proposed contract. If the form is accepted without objection by the person to whom it is tendered, this person is, as a general rule, bound by its contents, and his act amounts to an acceptance of the offer made to him, regardless of whether he reads the document, or otherwise informs himself of its contents. There is no testimony that plaintiff did not read this receipt and have actual knowledge of its contents. He testified that he "accepted the check and then went out of the building."

If he did not read it, he was under the necessity of satisfactorily explaining his failure to do what the law required him to do. In order to avoid the effect of this express contract it would be necessary for him to bring himself within one of the recognized exceptions to the well-established rule holding him bound by its terms. It was said in the case of *Taussig* v. *Bode & Haslett,* 134 Cal. 265, 266, [86 Am. St. Rep. 250, 54 L. R. A. 774, 66 Pac. 259, 260]: "We think it clear that the notice is a part of the contract. It was printed plainly on the face of the receipt. The whole paper is extremely brief. It was the duty of respondents to take note of its contents, if they had the opportunity, and their opportunity was ample. The presumption, therefore, is that they did read it. Against this presumption there is no evidence, and none, we think, would have been admissible to show that the respondents had failed to do what their duty required them to do. Assuming, then, that they read the receipt, and whether they did or not, that they are chargeable with knowledge of its contents, they had fair warning that any loss by leakage was at their risk, or, in other words, that the appellant declined all responsibility for loss by leakage. Their acceptance of the receipt and storage of the goods with knowledge of this condition made it binding upon them, as one of the terms of the contract. The cases cited by counsel, in which it has been held that notices printed or stamped on bills of lading, but not signed by the consignors, do not exempt common carriers from their common-law liability are not in point. They rest upon the peculiar nature of the public duties of common carriers and the public policy of preventing them from limiting their liability by mere notices not expressly assented to by the shippers. . . . The case of warehousemen is entirely different. . . . They are not bound to receive articles offered for storage, and may make such terms as they choose to impose as conditions of their contract."

Defendant's motion should have been granted, then, upon the ground that the plaintiff had by express contract released the defendant from all liability for the loss of his suitcase. Whether as a matter of public policy the defendant would be permitted to expressly contract to be released from the consequences of its own negligence is not involved in the present case, because there is no evidence in the record of any negligence on the part of the defendant.

In view of the conclusion we have reached, it also becomes unnecessary for us to discuss appellant's contention that the judgment is excessive for the reason that much of the contents of the suitcase was such that a bailee could not be made responsible therefor without notice of the nature of the same.

The judgment is reversed.

Nourse, J., and Sturtevant, J., concurred.