OWEN H. McNULTY, Respondent, v. KANSAS CITY Appellant.

Kansas City Court of Appeals, July 2, 1919.

1. **NOTARY PUBLIC: Fees: Contracts.** Where a notary public, in the employ of a city, enters into a contract, express or implied, by which, in consideration of his employment at a fixed salary, he was to turn the fees for services as a notary public over to the city, he cannot thereafter recover such notarial fees from the city.

2. **MUNICIPAL CORPORATIONS: Notary Public: Fees.** An employee of the treasurer of a city, as a notary public, took the acknowledgments of the city treasurer to purchase certificates of properties sold for taxes, the purchaser of such properties paying the notarial fees which went into the City Treasurer under an arrangement whereby the employee accepted a monthly salary from the city in lieu of such fees. It was *held* that under the circumstances as shown by the evidence the notary, having voluntarily agreed to waive his notary fees and to accept in lieu thereof money for which he gave no equivalent whatever except the fees he waived, he is not now in a position to turn around, after his relations with the city have been terminated, and recover such fees from the city.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird*, Judge.

REVERSED.

*Numa F. Heitman* for respondent.

*J. A. Harzfeld* and *A. F. Smith* for appellant.

TRIMBLE, J.—When city taxes on real estate in Kansas City become delinquent, payment thereof is enforced by a sale of each delinquent tract to a purchaser who pays to the city the unpaid tax, with interest, penalties and costs, and receives from the city treasurer a Certificate of Purchase acknowledged by him before one of the clerks in his office who holds a notary

public's commission for this purpose. For this acknowledgment the sum of fifty cents is included in the amount paid to the city by the purchaser, that being the fee allowed by statute to a notary for taking and certifying to an acknowledgment. These delinquent sales, and the consequent execution of the Certificate of Purchase, cover a period of about two weeks in November or December of each year; and at the close of said sales many certificates are acknowledged.

Plaintiff was a clerk in the treasurer's office from and including the year 1904 down to June, 1910, and was the notary before whom the treasurer acknowledged the certificates of purchase at the end of the two weeks of delinquent sales in each year, and also the tax deeds to such tracts as were never redeemed. On August 12, 1912, he brought this suit to recover from the city the sum of $2850.50 as due him for acknowledgments taken, as above indicated, during the years 1908 and 1909. He recovered judgment in the trial court for the full amount sued for, and the city has appealed.

It is admitted that the above sum represents the total amount of notary fees for such acknowledgments taken by plaintiff while in the treasurer's office during those two years, and that the same were collected by the treasurer and paid into the general fund of the city treasury. It is the contention of the city that plaintiff waived the right to receive payment of these fees and that he is now estopped from claiming them.

In 1885 the Supreme Court of this State held, in Leach v. Hannibal & St. Joseph R. Co., 86 Mo. 27, that a notary public in the service of a railway company could waive his right to compensation for notarial services; that having entered into a contract of service to the railway company for a fixed salary, he, prima facie, agreed to give the latter his entire time; and the notarial work having been done in that time, then, *in the absence of any "agreement or understanding or line of conduct between the parties"* showing that such employee was to receive the statutory fees for the

notarial service rendered his employer in addition to his stipulated salary, he could not recover of his employer for such notarial service, and in the absence of any such showing he would be deemed to have waived the right to claim such fees.

Following this rule thus laid down, the city in February, 1892, passed an ordinance known as Ordinance No. 3910 which provided that one of the clerks in the treasurer's office should be a notary public, that the salary paid by the city to him as a clerk should be payment in full for all services rendered by him, including those of a notarial character, and that all fees paid for such notarial work should be turned into the city treasury.

Under this ordinance, in April, 1892, one Wood, became a clerk in the treasurer's office and was the notary who took the acknowledgments during his stay therein, which was until February, 1893. He sued for his fees, and in Wood v. Kansas City, 162 Mo. 303, the Supreme Court held the above-mentioned ordinance void, and that since it was void it was the same as if it had never existed, and Wood was not estopped from recovering his fees by reason of having accepted his salary for his services as clerk for the reason that the *ordinance* was nothing and *he had done nothing* to waive his fees or to create an estoppel. On Page 310 of the Wood case the court say: "It is not claimed that he entered into any express contract, aside from the ordinance by which his fees as notary were to be received and retained by defendant, and, the ordinance being void, there was no express contract at all with respect thereto, hence nothing to estop plaintiff from claiming them by reason of said ordinance." And on page 311 of said Wood case the court, in distinguishing it from the Leach case, say that Leach may have *"entered into a contract express or implied by which in consideration of his employment at a fixed salary he was to have no fee for such service.* And after having thus rendered the services he could not of

course recover the fees allowed him by law therefor. In the case at bar (the Woods case) *there was no such contract.*" (Italics ours.) In other words, the Supreme Court held that in the Woods case there was no agreement, or line of conduct on Wood's part by which *he* consented that he would allow the city to have the notary fees and accept in full of his services the fixed salary paid him, and hence he could not be denied his fees but was entitled to them in addition to his salary. We are of the opinion that the case we are now called upon to decide differs in this respect from the Wood case. In the case at bar not only did plaintiff make an express agreement to waive his notary fees and accept a stipulated salary in full for all his services including those of a notarial character, but he thereafter continued on in the service of the city without change of terms and under circumstances that necessarily imply that he waived the right to the notarial fees and accepted in lieu thereof a certain fixed monthly sum paid to him as salary in full of all his services including those of a notarial character. If he did this, he is not entitled to now turn around after his relations with the city have terminated, and, nearly three years after the notarial services were performed, demand the fees therefor in addition to the money he received from the city with the manifest intention on his part, and the understanding implied from the circumstances, that he was not charging for his notarial services but was accepting his monthly stipend in full of all services. The facts which we think manifest that agreement, intention and course of conduct on his part are as follows:

It is conceded that the certificates of purchase for each year were executed and acknowledged by the treasurer at one time and the work of the notary in filling out and attesting the certificates of acknowledgments was done during his office hours as clerk in the treasurer's office. If in doing this at any time he had to work overtime he was paid for such overtime in ac-

cordance with the regular rates prescribed for over-time work at a clerk.

After the decision in the Woods case the city, in 1901, repealed 'ordinance No. 3910 hereinabove mentioned, which required the notary-clerk to accept only his salary as clerk and directed the turning of the notary fees into the city treasury, and enacted an ordinance No. 18581 which provided that the notary-clerk in the treasurer's office should enter into a contract agreeing to acept as compensation for his services as clerk the sum of $5 per month and that he should receive, in addition thereto, the notarial fees accruing in said office. Under this ordinance the notary-clerk in the treasurer's office got $5 per month and the notary fees. In this way such clerk's compensation, instead of running from $75 to $90 per month as the other clerks in the office, ran up to a very large sum upon the number of tracts sold for delinquent taxes.

In 1904 a certain city treasurer selected the plaintiff as "a young man that he could trust" and who would "keep his word with him," and "do the square thing by him" and made a private agreement with plaintiff to appoint and make him the notary-clerk if he, plaintiff, would agree to accept the $5 per month paid by the city and $60 per month paid by the treasurer out of his own pocket and allow the notary fees to be kept by the treasurer. This "gentlemen's agreement" continued through 1904 and 1905, the plaintiff getting $5 per month from the city and $60 per month from the treasurer individually, and the treasurer getting the fund arising from the notary fees.

In 1906, owing to some public complaint or discussion about advertising the delinquent lists in a paper of very limited circulation, the treasurer advertised said list in one of the great dailies of the city where every property owner had an opportunity to see their property was being advertised for taxes. The result was that a great rush was made by many to pay their delinquent taxes before their property was sold.

and consequently there were few certificates of purchase to be acknowledged. The treasurer, in paying $60 per month to the plaintiff and keeping the notary fees, was losing money on his "gentlemen's agreement." Hence he proposed to the plaintiff that thereafter he would pay the plaintiff $75 per month *out of the city's funds* and let the *city* keep the notary fees, and to this the plaintiff agreed. No ordinance was passed authorizing him to be paid more than $5 per month. So that during 1906 plaintiff received $75 per month from the city $70 of which was wholly without authority or justification except upon the theory that the plaintiff was allowing the city to keep the notary fees in return for which he was receiving the said monthly stipend regularly out of the funds of the city. No new terms or agreement were entered into by plaintiff. He continued on in the treasurer's office the same as from the first, the only difference being that whereas he first got $5 from the city and $60 from the treasurer and allowed the treasurer to keep the fees, now he got $75 *from the city* and allowed *the city* to keep the fees. Thus there was a *voluntary* agreement on the part of plaintiff to waive his fees and take in lieu thereof the money paid him by the treasurer, and this agreement was carried on into effect between plaintiff and the city whereby it took the place of the treasurer in paying plaintiff's monthly salary and in retaining the fees for the notary work. So that, thus far, plaintiff is in a vastly different situation from that of Woods in his case. He is in the position of having voluntarily agreed to waive his notary fees and to accept in lieu thereof money for which he gave no equivalent whatever except the fees he waived. This waiver was first to the treasurer and afterwards to the city, and during 1906 he got from the city $70 per month to which he was in no way entitled and for which he gave no equivalent except the fees he allowed the city to take. And under that situation the city was giving him a sure thing as to the $70 and taking the chances on receiving enough fees to

pay for or reimburse it for said amounts. Plaintiff did not ask and has not asked anyone for those fees.

In April, 1907, the city passed a general omnibus ordinance fixing the compensation of all officers and employees in the city service. This ordinance said nothing about a notary-clerk in said treasurer's office but did provide that 5 clerks therein should each receive $900 per year and repealed all ordinances in conflict therewith. The effect of this ordinance was merely to authorize and validate the hitherto unauthorized payment of $70 each month to the plaintiff and while it does not say it is pursuant to and in accordance with the arrangement theretofore existing between plaintiff and the city, yet there can be no question but that such was the case. Nothing was said by plaintiff to indicate that any other or different terms were required or expected. The plaintiff kept on in his clerkship as before drawing his $75 per month and the city retained the notary fees, and no claim was made for them nor any intimation that the old arrangement was not continuing the same it had been.

In 1908 a new treasurer went into office, but the plaintiff continued on in his clerkship and the record discloses no change in the arrangement nor any intimation that there would be any change whereby plaintiff would claim the fees. At the beginning of 1909 the city passed an ordinance the effect of which was to raise the salary of fourteen clerks in the treasurer's office to $90 a month each. Nothing was said therein about a notary in the office nor as to what should be done about the fees, but under it plaintiff's salary was raised to $90 per month and he continued to receive it from then until in June, 1910, when he resigned. Still no change had been mentioned or intimated as to the fees and it is manifest no change was thought of or contemplated, and it is also manifest that the city would not have paid the $70 per month nor added an increase to that sum had there been a suggestion that plaintiff would afterwards demand, in addition to the

salary of the clerkship, a sum which at the minimum was more than the amount he was getting. He continued as before to draw his salary and allow the fees to be retained by the city in the same manner and under the same arrangement as had theretofore existed. His conduct throughout indicated that he had no intention of charging for the fees; the city had every right to believe that the old arrangement existed, and if plaintiff had any intention of claiming said fees he deliberately concealed it and made no move to disclose it for more than two years after he left the city's employ. It is true the fees were not due the city in the first place; but his notarial service was rendered the city treasurer, and while it was paid for the treasurer by the purchasers, and said fees originally were the plaintiff's as a prerequisite to his office of notary, yet he voluntarily agreed to allow them to go first to the treasurer and afterwards to the city in return for the fixed and certain monthly sums he received. And by this arrangement, expressly entered into at first and later continued without notice of any change, he obtained money from the city which it otherwise would not have paid him and to which he had no claim whatever, except upon the theory and understanding that the fees for the notarial service which he rendered during his time which belonged to the city, should go to it. Under these circumstances we do not think plaintiff is entitled to recover. [Benjamin v. City of New York, 78 N. Y. Supp. 1067; Knox v. City of New York, 78 N. Y. Supp. 985.] A justice of the peace who under a statute paid fees which he had earned and owned into the county treasury and received in lieu thereof a salary from the county court, was thereby estopped from afterward reclaiming the fees although the statute under which he paid the fees into the treasury was unconstitutional and void. [State ex rel. v. Messerly, 198 Mo. 351.] So also a probate judge has been held to waive his right to fees. [Henderson v. Koenig, 192 Mo. 690.] In that case at page 714 the court say:

"A waiver occurs, when 'one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forbears the doing of some things inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards.' [Williams v. Railroad, 153 Mo. 487, l. c. 519; Bishop, Contracts (1887), sec. 792.]"

While this case was overruled on another point in State ex rel. v. Imel, 242 Mo. 293, yet the court on page 305 reaffirmed the doctrine of waiver and estoppel therein asserted. [See, also, Greene County v. Lydy, 263 Mo. 77; Collier v. Montgomery County, 103 Tenn. 705; Gross v. Board of Comrs., 158 Ind. 531; Galbreath v. Moberly, 80 Mo. 484, 487.] In the case of Merzbach v. New York, 163 N. Y. 16, the plaintiff was a subordinate in the District Attorney's office and performed notarial services at the Attorney's request. It was held that he could recover his fees therefor *"unless he has waived his right thereto either expressly or impliedly."*

It is urged that there was no consideration for the plaintiff waiving his right to his fees. We think there was. He gave up an uncertain, unknown quantity which would accrue to him at one time in the latter part of the year for a *certain,* definite and fixed sum payable to him *every* month. Besides, a consideration will exist if there is a benefit to the promisor or a detriment to the promisee. [Cave v. Card, 34 Mo. 513; 9 Cyc. 311.]

We do not think the plaintiff comes within the terms of the case of Woods v. Kansas City, supra, but comes more nearly under the principle enunciated in the Leach case. In the Woods case the city attempted to *compel* the notary to accept something in the place of his statutory fees and as there was nothing the notary did to manifest his consent thereto, the Supreme Court said he could not thus be deprived of them. We have an entirely different situation here. The plaintiff

voluntarily waived his fees and obtained from the city that which he could not have obtained had he not waived them. The judgment should be reversed and it is so ordered. All concur.