[Civ. No. 5369.   Third Appellate District.—March 11, 1936.]

CHARLES A. BLISS, Jr., Respondent, v. FRIEND W. RICHARDSON, Superintendent of Banks, etc., Appellant.

Sullivan, Roche, Johnson & Barry for Appellant.

Charles A. Bliss, Sr., for Respondent.

THOMPSON, J.—The defendant, as State Superintendent of Banks, has appealed from a judgment which was rendered against him in a suit for notary's fees for services performed by the plaintiff at the request of California Trust and Savings Bank, which fees were paid to and retained by said bank in a trust fund, and determined to be the property of the plaintiff. The action is in the nature of *assumpsit*, for money belonging to the plaintiff had and received and retained in a trust fund of the bank, the assets of which bank are held in the control and possession of the State Superintendent of Banks by virtue of proceedings which are pending for the liquidation of the bank pursuant to law.

The cause was tried by the court sitting without a jury. Upon some conflict of evidence the court found all the material issues in favor of the plaintiff and rendered judgment against the defendant for the sum of $1119.25. The court specifically found that for a long time prior to the appointment of the plaintiff as a notary public he was employed by California Trust and Savings Bank as a clerk in its trust department on an agreed salary of $90 per month and that said employment continued through the entire period which is involved in this action, all of which salary was fully paid; that prior to February 23, 1931, at the request and for the accommodation of the bank it procured plaintiff's appointment as a notary public, without any valid agreement as to whom the legal fees which were paid on account of such notary services were to belong; that the plaintiff thereafter, from the date of his appointment as a notary to January 21, 1933, at the request of the bank, duly protested notes, checks, drafts and trade acceptances, administered oaths and acknowledged written instruments as required by law for which services the legal fees were paid by customers of the bank to the bank and deposited in a special separate trust fund therein, and

retained by the bank in the aggregate sum of $1119.25, which belongs to the plaintiff, no part of which has been paid to him; that no demand was made upon the bank for this money until after the assets of the bank were taken possession of by the defendant in the proceeding now pending for the liquidation thereof, after which a duly itemized and verified claim therefor was presented for payment and rejected, and that the defendant now holds in his possession said sum of money in trust for and belonging to the plaintiff. The court did further find that by his failure to demand payment of said fees for a period of nearly two years, and by personally collecting and turning over to the bank some of said fees, the plaintiff acquiesced in the bank retaining said money as its own property, but that the last-mentioned implied agreement was without consideration and void. Thereupon judgment was rendered in favor of the plaintiff for the sum of $1119.25, from which judgment the defendant has appealed.

It is contended the findings and judgment are not supported by the evidence, that the findings are in irreconcilable conflict and that the plaintiff is estopped from claiming any portion of the notary fees by his conduct in personally collecting and paying to the bank a portion thereof and by failing for a period of nearly two years to demand payment thereof.

We are of the opinion the findings and judgment are adequately supported by the evidence. During all of the time involved in this litigation and for more than two years prior thereto the plaintiff was employed by the California Trust and Savings Bank as a clerk in the savings department thereof, during all of which time he was engaged in the performance of clerical duties separate and distinct from his services as a notary public, on a stipulated salary of $90 per month, which amount was never increased or changed, and which was paid monthly by checks enclosed in an envelope and left on his desk. In February, 1931, he was appointed as a notary at the request of the bank for its accommodation in aiding and expediting its notarial work for the benefit of customers separate and distinct from his duties as a clerk of the bank, the compensation for which was invariably paid by the customers and not by the bank; he was personally responsible for all damages for errors committed by him in his notarial services; his services as a notary did not interfere with the performance of his duties as a clerk; much of such

services were performed by him outside of the bank after banking hours, and when they were performed during banking hours it was always with the consent and approval of his superior officer in the bank; it was a rule of the bank that moneys paid incident to all banking transactions should be deposited in the bank and that notary fees thus paid should be and were impounded in a special trust fund maintained for that purpose; several of the clerks of the bank were permitted to and did perform services outside of the bank in keeping books for other individuals and enterprises for which they charged, collected and retained their fees; Mr. Wilbur D. Polk had charge and supervision of the clerks and the bookkeeping of the trust department of the bank. He testified that the plaintiff "took over the duties, the notarial work, to assist myself and Mr. Blair in handling some of that work." In response to a question: "Did you ever have any understanding with him when he was appointed a notary public, . . . ?" he replied, "A. No, just a general understanding. . . . The Court: Q. When he was appointed there was no agreement made? A. No. . . . I presumed it was understood." The plaintiff testified that no agreement was ever made with the bank that the notary fees were to belong to it, and that no statement to that effect was ever made to him by any officer of the bank. In response to the question propounded by the court, "When he was appointed [as notary] there was no agreement made?" Mr. Polk replied, "No". Furthermore, Mr. Polk testified that "I recollect a conversation had with him [the plaintiff] to the effect that when he was acting in the capacity of a notary public *that he was not working for the bank.* . . . [that] he was working as a notary public and in that capacity entirely and not as an employee of the bank when doing that work." The last statement infers that the plaintiff was deemed to be working for himself in the performance of his duties as a notary public and that he would be entitled to the fees allowed by law therefor. Upon the preceding testimony the court would have been justified in finding that there was no agreement that the bank was to own the fees collected by the plaintiff for his notary services. In effect that is what the court found. Those fees were in fact impounded in a special trust fund, and the court properly determined that they belong to the plaintiff. The findings and judgment to that effect are adequately supported by the evidence.

There is nothing in the case of *Second National Bank of Ashland* v. *Ferguson*, 114 Ky. 516 [71 S. W. 429], upon which the appellant relies, in conflict with what we have heretofore said. In that case Ferguson was acting as bookkeeper for the bank. He was also a notary public and by consent of the bank he had been retaining his notary fees for protesting instruments for the bank. His salary was reduced. A resolution of the board of directors of the bank was regularly adopted, which provided "the salary of the individual bookkeeper be fixed at the rate of $600.00 per annum *and he shall make all protests free of charge*". This resolution and the specified terms of his future employment were known to the clerk. He made a counterproposition to continue working for $50 per month and $10 in addition thereto in lieu of notary fees. This was rejected. He continued to work for the bank for some time. When he resigned from his clerkship he brought suit for the aggregate amount of notary fees which accrued since the change in his salary occurred. Judgment was rendered in favor of Ferguson. On appeal the judgment was properly reversed for the reason that the evidence refutes the possibility that the clerk and the bank had an agreement that he should retain any part of his notary fees. The undisputed evidence showed that no such agreement existed.

For similar reasons the case of *McNulty* v. *Kansas City*, 201 Mo. App. 562 [198 S. W. 185], upon which the appellant in this case also relies is not authority in his favor. The judgment which was awarded McNulty for notary fees earned while he was also acting as a clerk for the treasurer of Kansas City was reversed for the reason that the clerk had specifically agreed to serve as such for a specified salary and waive all notary fees. The court said in that regard, "Not only did the plaintiff *make an express agreement* to waive his notary fees, and accept a stipulated salary in full for all his services including those of a notarial character", but his conduct also implied that he waived the fees. In the present case there was no express agreement to waive the fees. Moreover, the court found that the implied agreement to that effect was void for lack of consideration. These cases are therefore not authority in support of the appellant's contention that the law implies a waiver of the fees for the reason that they were not demanded for a period of some two years.

Nor are the findings in irreconcilable conflict for the reason that the court determined that the plaintiff's failure to demand of the bank the impounded fees for a period of nearly two years constitutes an agreement "by implication" that the fees belong to the bank. The court in fact specifically found that this agreement which was assumed to have arisen by implication was void for lack of consideration. It follows that since a void agreement, in effect, is no agreement, the court virtually found that no such valid agreement exists. The judgment in favor of the plaintiff was rendered on the findings and theory that there was no valid agreement for the bank to retain the notary fees. These findings are supported by the evidence. There is no evidence that there was any consideration for an implied agreement on the part of the plaintiff that the bank should retain his notary fees. He performed the notarial work in addition to his services as a clerk in the trust department. He was responsible on his bond for any dereliction of his duties as a notary public. The fees were not paid by the bank, but by customers of the bank. He continued to perform his duties as a clerk of the trust department exactly as he had done prior to his appointment as a notary public. These duties were added to his services as a clerk, without increasing his salary. He was not told that the fees would belong to the bank. On the contrary, he was specifically informed that when he was performing duties as a notary public he was not deemed to be working for the bank. There was no consideration for an agreement for the bank to retain the notary fees allowed by law for the performance of such services by the plaintiff.

The plaintiff did not waive his claim upon the special trust fund for the return of his notary fees, by voluntarily delivering to the bank a portion of his notary fees which he personally collected. This may be deemed to have been done to conform to the rule of the bank that all money paid to any officer of the bank incident to bank transactions should be paid to it and deposited in the special fund so that the bank might retain a complete history of all such transactions.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.