[Civ. No. 6886. Second Appellate District, Division Two.—December 29, 1931.]

DODWELL & COMPANY, LTD. (a Corporation), Appellant, v. LOS ANGELES WAREHOUSE COMPANY (a Corporation), Respondent.

Gibson, Dunn & Crutcher and H. F. Prince for Appellant.

Muhleman, Anderson & Palmer and C. Sherman Anderson for Respondent.

THOMPSON (IRA F.), J.—On February 17, 1925, plaintiff delivered to Los Angeles Steamship Company, at San Francisco, four cases containing thirty-four Chinese rugs consigned to plaintiff at Los Angeles. The evidence shows that Cyrus A. Hasty arranged with plaintiff for the shipment, and that the cases were to be put in a warehouse belonging to defendant upon arrival and a warehouse receipt issued to plaintiff. The latter expected they would be so warehoused as to make it possible for Hasty to display the

rugs to prospective customers, and if a sale was made Hasty was to get a delivery order from plaintiff, it being understood that the rugs would be sold for cash, or if on credit it was to be subject to plaintiff's approval of the purchaser. Hasty was to pay the storage charges, under this verbal agreement with plaintiff. Pursuant to this plan Hasty conducted the negotiations with defendant under which the warehousing was done. In some way not disclosed by the evidence, but evidently with plaintiff's consent, in view of the fact that the goods were consigned to it and the bill of lading was its own, Hasty warehoused the goods on March 6, 1925, in accordance with his verbal agreement with plaintiff, without notice to defendant that plaintiff was the owner of the shipment. The "in sheet" of defendant shows that the rugs were received from Cyrus A. Hasty & Company. The next day, however, a warehouse receipt was issued covering the rugs and delivered to Hasty, showing that they were received in storage by defendant "for the account of Dodwell & Company, Ltd., pledgee, Ex Cyrus A. Hasty & Co." The rugs were stored, so that they could be displayed, in a room designated as No. 533, in which room Hasty had theretofore officed and which was in a part of the warehouse where offices were rented by various parties. In some way unknown to either plaintiff or defendant, except in one instance disclosed by the evidence, the rugs were removed by Hasty from said room prior to January 6, 1926. On the latter date the original warehouse receipt was canceled by Mr. Berbower, who was the office manager of defendant and who passed away prior to the date of trial. The evidence shows that it was mailed to Los Angeles by plaintiff on January 4, 1926. On January 6th, defendant's general manager was told by representatives of plaintiff that the rugs had been stolen from the warehouse and sold by Hasty, and upon investigation defendant found that they had been removed. Hasty was not present at the trial and apparently was desired as a witness by both parties.

The complaint contained two counts, the first for damages for failure to deliver the goods as provided in said warehouse receipt and the second for damages for conversion of the goods stored.

Defendant in addition to a general denial of the matters alleged in the complaint, alleged as separate defenses that

in storing and safeguarding the rugs in question it at all times exercised such care and diligence as a reasonable and careful owner of similar goods would have exercised under the same circumstances; that in employing its servants and agents it made diligent inquiry as to their honesty and integrity, and that to the best of its knowledge during the period such rugs were so stored it had only honest and faithful employees, who carefully and prudently looked after and cared for them.

The court's findings are very voluminous, but among them are the following: "VIII. During all the time said rugs were stored with defendant they were kept in defendant's warehouse in a locked room, access to which could be gained only by unlocking the door thereof with a key securely kept in the possession of the defendant, and it had instructed its employees not to allow said Cyrus A. Hasty, or any person or persons other than employees of defendant, to enter said room unless accompanied by one or more of defendant's employees. That defendant's employees were instructed by defendant not to inspect or handle any goods stored with the defendant, except in the ordinary course of business, and defendant never, at any time, had any knowledge of any violation of any instructions; and in the storing and safeguarding of said goods defendant at all times exercised such care and diligence as a reasonable and careful owner of similar goods would have exercised under the same or similar circumstances. IX. In employing its servants and agents, defendant at all times made diligent inquiry as to the honesty and integrity of such applicants, and, to the best of defendant's knowledge, it had in its employ during said period from March 6, 1925, to January 6, 1926, honest and faithful employees only."

Defendant both by its answer and in the evidence produced by it took upon itself the burden of proving that the rugs were not taken from the warehouse by reason of its negligence, and we are of the opinion that it properly had such burden by reason of the production of the warehouse receipt introduced in evidence and the fact that defendant did not have the rugs to deliver when the receipt was surrendered to it. Such proof would seem to make a *prima facie* case under the first cause of action alleged, as no showing was even attempted that the deliveries were made

on the order of plaintiff or upon production of such receipt, which the evidence shows remained at all times in plaintiff's possession from shortly after its issuance until it was mailed to Los Angeles on January 4, 1926.

In placing the rugs in a room where they could be displayed to prospective customers defendant carried out the arrangement made between Hasty and the plaintiff. Mr. Turner, defendant's general manager, testified that the display room was kept locked and the key to it retained in Mr. Berbower's desk in defendant's main office; that Hasty did not have a key to the room, and that in order to enter such room it was necessary for him "to get in touch with Mr. Berbower, who would send a man with him with a key, and they would go to the room and open it up"; that he knew of no instance when Mr. Hasty was not compelled to go through that procedure to obtain access to the room; that their instruction to employees was that no one was to be allowed in any of the buildings without one of the employees being with them; that the only keys that he knew of to the room in question were one "with the night janitor; there would be a key with the superintendent and I carry a pass key, and the original key", and that the original key was "kept in Mr. Berbower's desk". The witness also testified that there was one window in the room opening upon a sheer drop of five stories; that there was no fire-escape nor any ladder or other means of gaining access to the room other than through the doors and window; that a day and night watchman were kept on duty at the warehouse; that at the time the rugs were in storage a watchman was maintained so that people could not get on to the fifth floor, where the rugs were, without the knowledge of the watchman; that during such period the first floor of the building was occupied by the Los Angeles Furniture Mart, and no one could get in or out of the building unless they had an office there and were known to the telephone operator or the manager on the first floor, or unless they came through the main office at 315 Commercial Street; that the Los Angeles Furniture Mart closed its office about 6 P. M., when the night watchman locked the door, both inside and out; that it was not possible for anyone to enter the building through the first floor. Turner further stated that he had no knowledge of any of the employees being dishonest,

and that it never came to his attention that any of the goods in question had been stolen from the warehouse or removed until January 6, 1926.

The superintendent of defendant testified that while that portion of its building in which room 533 is located was used by the public, everyone was required to have an order whether a tenant or whether it was a storage account, before removing anything from the building; that anyone who wanted to see the various tenants, at that time, could not go up the elevator entering from San Pedro Street at all; that during the day one or more persons were on duty in the lobby all of the time until 5:30 P. M., when the place was "locked up"; that the Los Angeles Furniture Mart was operated by defendant, and its watchman and clerical employees were in the employ of defendant. The witness also said that he had no personal knowledge of any goods ever having been lost through theft except the rugs in question and in 1926, when the watchman was bound and gagged and some six or seven hundred cases of whisky were taken.

The finding as to the diligence used by defendant in selecting its servants and agents and as to the employees being honest and faithful is not questioned, and the evidence seems to support it. It is true that one witness, a tenant of the building by the name of Hartog, testified that he went with Hasty to room 533, and that on his first visit he entered through a connecting door from room 531, which was next to it, and that he bought one of the rugs from Hasty and carried it out through the hall door of room 533 and out of the building without being questioned. The witness also testified that he had frequently been in room 531 and that the door opening into room 533 "was open most of the time"; also that he had observed other tenants on the fifth floor going out with bundles and had not seen them stopped, and that on other occasions he himself had carried "samples or small packages" out of the building. He was asked: "Were you ever stopped?", to which he replied: "No, I was a tenant and everybody knew me." A witness who worked for the occupant of room 531 testified that Mr. Hasty had room 533 for a while but could not remember whether it was in 1923, 1924 or 1925; that there was a roll of rugs against the wall but she did not know what kind they were; also some pongee silk; that the door between the rooms was

left open on numerous occasions, and she answered Mr. Hasty's telephone calls during his absence; that the latter had a desk in his room; that she never saw him carrying any goods out of the room, although she had seen him in the room alone. No witness testified to removing or seeing any rugs removed except Mr. Hartog. Another witness said no rugs had been stored in the room except in the instance under consideration. Mr. Turner, the general manager of defendant, also testified that he did not know of his personal knowledge whether the connecting door between rooms 533 and 531 was unlocked. Both he and the superintendent testified on direct examination, without reference to this particular door, that the room was kept locked, the superintendent stating that his presumption that it was kept locked was based upon the instructions given to defendant's employees and "his daily observations to see that the orders were carried out".

There is no doubt that the testimony substantially supports the finding as to general care both as to guarding the building and as to the selection of and instructions to its employees, but the question is: Does the evidence of general care conflict with the evidence respecting the door between the two rooms? The testimony of the witness Hartog that he had frequently been in room 531 and that the door into room 533 "was open most of the time" and that of the witness who worked for the occupant of room 531 that the door between was left open on numerous occasions is apparently uncontradicted. The word "apparently" is used because the particular testimony is uncontradicted unless the general statements concerning custom and orders is sufficient to raise a conflict. The proof, however, of general caution does not establish in the face of specific testimony the lack of negligence in the particular instance. If as testified, Hasty could not enter or remain in room 533 without the presence of an employee of defendant, the employee in all human probability knew of the situation. It is manifest that that portion of finding VIII reading as follows: "During all the time said rugs were stored with defendant they were kept in defendant's warehouse in a locked room, access to which could be gained only by unlocking the door thereof with a key securely kept in the possession of the defendant," is not supported by the

evidence. It may be argued that inasmuch as the defendant received the rugs at the hands of Hasty they were not advised of the necessity of protecting the plaintiff's interests against actions of Hasty and hence the particular lack of negligence is not sufficient to overcome the general finding of due care. It is to be observed, however, first, that the warehouse receipt was issued in the name of plaintiff "pledgee ex Cyrus A. Hasty Co." Here immediately is recognition of an interest of plaintiff perhaps as great from the viewpoint of value as that of owner. Furthermore the testimony stands uncontradicted that the instructions were to the effect that Hasty was not to be allowed in the room without an employee of defendant—which is also subject to the interpretation that defendant was to guard the goods against disposal by Hasty. We are forced to the final conclusion that those portions of finding VIII lack sufficient support in the evidence.

Finding number III reads as follows: "That on or about March 6, 1925, plaintiff, as owner thereof, delivered to one Cyrus A. Hasty thirty-four (34) Chinese rugs having the following dimensions, to-wit: (Here follows number and measurement of rugs). On or about said 6th day of March, 1925, Cyrus A. Hasty caused said rugs to be stored in the defendant's warehouse at Los Angeles, California, in the name of Cyrus A. Hasty Co." From the discussion of the case to this point it is obvious that Hasty did not store the goods in his own firm name, but rather in the name of Dodwell & Co. Hence this finding is without support in the evidence.

Finding number IV is also subject to attack. A portion of it reads as follows: "Said Hasty, was, at the time of the delivery of said rugs, permitted and authorized by plaintiff to sell said rugs on behalf of plaintiff, and said Hasty could, after a sale, deliver the possession of such rugs as were sold by him, upon receipt of the purchase price and the payment of same to plaintiff." The respondent attempts to justify this language by the contents of a letter written to Hasty by plaintiff on February 26, 1925. The material portion of that letter reads: "We are unable to understand why the procedure outlined by you cannot be successfully worked, as it would merely require the renting of space by you where you would unpack and *display* the rugs. Your

customers could be taken there and if a sale were made, our Los Angeles office would *issue a Delivery Order* in return for the payment of said rug or rugs." (Italics ours.) It will thus be noted that the finding does not accurately portray the true situation—that the parties contemplated that delivery should not be made to Hasty until a delivery order was given him in return for the purchase price of the rug.

Finding number XV is to the effect that Hasty was engaged as a factor and in such capacity was permitted and authorized by plaintiff to sell the rugs and respondent now contends that he was acting as such. It is plain that Hasty was not entitled to deliver a rug to anyone until he had purchased it and received written authority directed to defendant for its delivery. That is the reason the goods were placed in storage in the name of the plaintiff. The true situation is in fact reflected by another finding wherein it is said that "plaintiff was the owner thereof and entitled to the possession of the same upon payment to defendant of its proper charges for storing and handling said goods". Hasty had only the right to display and to purchase. Under these limitations the authority of *Moody* v. *Goodwin,* 53 Cal. App. 693 [200 Pac. 733], is in point. That case holds that a person entrusted with the possession of an automobile by the owner thereof for the purpose of showing it to a prospective purchaser and then returning it is not clothed with the authority of a factor and has not the right to sell it. Certainly the restraint imposed by plaintiff of requiring the issuance to itself of a non-negotiable warehouse receipt to accomplish its protection against just such a contingency may well be compared to the inability on the part of the automobile dealer to transfer the pink certificate. If anything, the defendant here is in a less favorable position to urge the authority of Hasty than was the purchaser in the Moody case, because here the defendant was the author of the non-negotiable receipt.

Another point requires discussion before we can determine this appeal. There are two findings, the one in substance saying that on May 11, 1926, Hasty made and delivered and plaintiff accepted his promissory note in the sum of $4,507.97 in full payment for said rugs and in full settlement of all claims plaintiff had against Hasty, and the

other that on May 25, 1926, plaintiff and Hasty entered into an agreement reciting the indebtedness evidenced by the note and providing that the sum should be paid in installments as follows: Two hundred dollars on or before May 20, 1926, and two hundred dollars on the 20th of each calendar month thereafter until May 20, 1927, at which time the full remaining balance was to be paid. The agreement it is found, also recites the assignment by Hasty to plaintiff of certain sums due from one Lewis M. Smith and the execution of a deed by Hasty and wife to plaintiff covering certain lands in the state of Minnesota, to be held as security. It also is found to contain this paragraph: "All former agreements, oral or written, and promissory notes, are cancelled and merged herein upon the execution of this agreement, by the parties hereto." The finding concludes with the statement that "plaintiff parted with all of its interest in and to said rugs and accepted the obligation mentioned in said agreement of the said Cyrus A. Hasty in full payment for said rugs and by said agreement the parties intended to and did arrive at a final settlement, including payment to the plaintiff for the said rugs stored in defendant's warehouse". It is not contended by respondent, nor was it shown that the promissory note had been paid nor the agreement fulfilled, it being its contention that the agreement was intended to be substituted as a new obligation to extinguish an old obligation. The appellant claims that the court was in error in concluding that the agreement was intended to be in payment of the claim appellant had against Hasty for the conversion of the rugs. It is to be observed, according to the testimony and another finding, that the plaintiff brought action against Hasty in July of 1926, one cause of action therein being upon the note and the other for conversion of the rugs. E. W. Hardie, an employee of plaintiff, testified with respect to the note as follows: "Q. Don't recollect whether it was given in payment for these twenty-one rugs? A. I don't know that it was so stated on the note, I couldn't recall that. Q. Well, was it given for the rugs mentioned in this complaint? A. That is a hard question to answer. What was the date of it? Q. May 11, 1926. A. Can I answer by saying it must have been given in payment of the rugs? Q. Answer to the best of your recollection, Mr. Hardie. A. I will say so

far as I recollect, it was given to us in payment for the rugs."

Recalling in connection with these facts, and the unliquidated nature of the claim against Hasty, the paragraph already quoted to the effect that all former agreements were merged and canceled, we cannot say that the trial court was in error in finally concluding that the parties intended to do away with the old claim and substitute a new one in its place. If so, the old one was paid and the respondent here was as effectually released as though it had been paid in cash. (*Taylor* v. *King*, 102 Cal. App. 361 [282 Pac. 1017].)

Further discussion is unnecessary.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 27, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 25, 1932.