[Civ. No. 2354.    Third Appellate District.—July 20, 1922.]

## P. W. FEENEY, Respondent, v. STANDARD OIL COMPANY (a Corporation), Appellant; PENNSYLVANIA FIRE INS. CO., etc., Intervener and Respondent.

[1] EMPLOYER AND EMPLOYEE — DELIVERY OF GASOLINE — NEGLIGENCE OF EMPLOYEE—DROPPING OF LIGHTED MATCH INTO SPILLED GASOLINE—LIABILITY OF EMPLOYER.—An employer is not liable for the negligent act of an employee in dropping a lighted match into some gasoline which had been spilled in making delivery, in the absence of a finding that the gasoline was negligently spilled, and the fact that the employee had been instructed not to smoke in making such deliveries does not enter into the problem.

[2] AGENCY—VIOLATION OF INSTRUCTIONS—LIABILITY OF PRINCIPAL TO THIRD PERSONS.—An agent's violation of instructions as to the manner of transacting any business is no defense in an action by a third person against the principal for negligence of the agent.

[3] NEGLIGENCE — DESTRUCTION OF BUILDING — IGNITION OF SPILLED GASOLINE—PLEADING — EVIDENCE—IMMATERIAL VARIANCE.—Where in an action for damages for destruction of a building caused from the ignition of spilled gasoline the only negligence alleged was that of spilling the gasoline and igniting it, but there was evidence that the defendant's driver, who spilled the gasoline, did nothing to clean it up, and the case was tried upon the theory that the failure to remove the same was in issue, the variance did not mislead defendant to its prejudice.

[4] ID.—FAILURE TO REMOVE SPILLED GASOLINE—FINDING.—The omission in such an action to find in express terms that the defendant's failure to remove the gasoline from the floor of the destroyed building constituted negligence is not fatal, since the danger arising from leaving the same unremoved is apparent to a man of ordinary capacity and prudence.

[5] ID.—REMOVAL OF SPILLED GASOLINE—DUTY OF DEFENDANT.—The fact that the plaintiff in such action had knowledge that defendant's driver had spilled the gasoline and was guilty of negligence in not removing it does not necessarily relieve the defendant from a charge of negligence, since it owed the duty to others of making reasonable effort to regain control of a dangerous material of which it had accidentally lost possession in order to prevent injury.

1. Liability of master to third person for damage caused by fire started by servant, notes, **Ann. Cas.** 1914A, 1102; **Ann. Cas.** 1917B, 1054.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro for Appellant.

Frank Freeman for Respondent.

Goodfellow, Eells, Moore & Orrick and George Herrington for Intervener and Respondent.

FINCH, P. J.—Plaintiff was the proprietor of a garage conducted by him in a building which he occupied under a lease from the owner thereof. The building was destroyed by a fire alleged to have been negligently caused by the defendant. Plaintiff sued as assignee of the owner to recover damages suffered by the destruction of the building. The Pennsylvania Fire Insurance Company, having insured the building against loss by fire, paid the owner the sum for which it was insured and intervened in the action. The intervener was given judgment for the sum so paid and this appeal is from the judgment so rendered.

The facts are simple and undisputed. The only question presented by the appeal is whether the fire was caused by negligence of the defendant. The court found: "That on the twenty-third day of August, 1917, plaintiff ordered certain quantities of gasoline from defendant, and on said last-mentioned date defendant, by its agent McDonald, delivered a quantity of gasoline to plaintiff at the above mentioned building owned by said Steel. Plaintiff had a tank inside the said building, and it was necessary for the said McDonald to draw the gasoline from the delivery wagon tank in which he had brought the gasoline to the said building and carry the same in buckets to the tank in said building. That in order to pour the gasoline into the said tank it was necessary for the said McDonald to be elevated to some extent, and a box had been provided by plaintiff upon which the said McDonald stood when pouring the gasoline into the said tank. This box was not strong, and before the delivery of gasoline was completed on said day, and while the said McDonald was upon the said box with

some buckets of gasoline, the said box broke, and at that time and because of that accident a large quantity of gasoline was spilled upon the cement floor of the said building above mentioned. McDonald did nothing in the way of removing the gasoline spilled as before mentioned or preventing it from catching fire. After completing delivery of the gasoline, McDonald attempted to have his delivery tags approved by the plaintiff, but plaintiff put him off for a short time upon the claim that he [plaintiff] was busy at that particular moment. McDonald waited for plaintiff some ten or fifteen minutes, during which time he engaged in some conversation as to going swimming with some young men about the said building, and while so waiting lighted a cigarette and carelessly and negligently dropped a match lighted for said purpose on the floor and into the gasoline that had been spilled as aforesaid. The said gasoline caught fire from said match, and as the result thereof the said building belonging to the said Edward L. Steel was destroyed by fire.'' Neither party contends that the foregoing findings are not supported by the evidence. There appears to be no evidence supporting the finding that the plaintiff provided the box on which McDonald stood at the time the gasoline was spilled, but that fact is immaterial, since there is no finding of negligence in that connection on the part of either McDonald or plaintiff. The evidence shows that the fire occurred about 3 o'clock in the afternoon and that the quantity of gasoline spilled was from two and a half to three gallons.

[1] Since the court did not find that the gasoline was negligently spilled the judgment must have been grounded upon McDonald's negligence in igniting the gasoline or his failure to promptly remove it from the cement floor of the garage. Section 2338 of the Civil Code provides: ''A principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business.'' Section 2339 provides: ''A principal is responsible for no other wrongs committed by his agent than those mentioned in the last section, unless he has authorized or ratified them, even though they are committed while the agent is engaged in his service.'' Under the rule thus declared it seems clear

that the defendant is not responsible for McDonald's negligent act in dropping the lighted match into the gasoline. The lighting of the cigarette was no part of the transaction of the defendant's business. It was an independent act for McDonald's personal enjoyment. It occurred during the time of his transaction of the defendant's business, but was no part thereof and was not in the course of his employment. The fact that defendant had instructed McDonald not to smoke while delivering gasoline does not enter into the problem. [2] An agent's violation of instructions as to the manner of transacting any business is no defense in an action by a third person against the principal for negligence of the agent.

[3] Was the failure of McDonald to remove the spilled gasoline actionable negligence for which defendant is responsible? Appellant contends that the finding as to such failure is insufficient to support the judgment on the issue of negligence on three grounds: (1) That such failure was not alleged in the complaint in intervention; (2) That the court did not find that the omission to remove the gasoline constituted negligence; (3) That no duty rested upon defendant to remove it.

The only negligence alleged was that of spilling the gasoline and igniting it. Two witnesses testified without objection, in answer to direct questions on the subject, that McDonald did nothing "to clean it up, or mop it up." In cross-examination of such witnesses, appellant proved that no one else removed the gasoline from the floor. From the foregoing it appears that the case was tried upon the theory that McDonald's failure to remove the spilled gasoline was in issue. Had defendant objected to such testimony at the trial the court probably would have permitted intervener to amend by alleging such failure. "No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleading to be amended, upon such terms as may be just." (Code Civ. Proc., sec. 469.) "Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an

immediate amendment, without costs." (Code Civ. Proc., sec. 470.) It cannot be said that the defendant was misled to its prejudice by the variance under consideration.

[4] The omission to find in express terms that the defendant's failure to remove the gasoline from the garage floor constituted negligence is not fatal. The highly inflammable and volatile qualities of gasoline are well known. That the gas generated therefrom is a dangerous explosive is a matter of common knowledge. The danger arising from leaving two and a half gallons of gasoline spread out over the cement floor of a garage in the Sacramento Valley in the middle of an afternoon in August would be apparent to a man of ordinary capacity and prudence. The necessity of its prompt and careful removal to avoid probable injury is plain. The probability of ignition by a spark from an automobile engine, a carelessly lighted match or the fire of a cigar or cigarette is a matter of common experience. The danger to be apprehended was well within the range of reasonable foresight. The facts and circumstances were such that no inference but that of negligencee can be logically drawn from the failure to remove the gasoline which had been accidentally spilled. Under such state of facts an express finding of negligence is not required. (*Cooley* v. *Brunswig Drug Co.,* 30 Cal. App. 58 [157 Pac. 13]; *Catlin* v. *Union Oil Co.,* 31 Cal. App. 597 [161 Pac. 29]; *Van Praag* v. *Gale,* 107 Cal. 438 [40 Pac. 555]; *Jacobson* v. *Northwestern Pac. R. R. Co.,* 175 Cal. 468 [166 Pac. 3]; *Grossetti* v. *Sweasey,* 176 Cal. 793 [169 Pac. 687].)

[5] The next question is whether it was the duty of defendant to remove the spilled gasoline. The evidence shows that during the time of the delivery of the gasoline, and until the fire started, the proprietor of the garage was working on an automobile in some part of the garage not definitely located by the evidence in the record. The exact location seems to have been made clear to the trial court by means of a diagram referred to by the witnesses, but this diagram was not included in the record on appeal. It does not appear from the evidence whether the proprietor knew prior to the fire that any gasoline had been spilled. If it be assumed, however, that the proprietor had

such knowledge and that he was guilty of negligence in not promptly removing it, it does not necessarily follow that the defendant was not also negligent. Nor would McDonald's independent act of negligence in dropping the lighted match relieve the defendant from the consequences of his negligent failure, as its agent, to remove the gasoline. "If I am guilty of negligence in leaving anything dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but unquestionably against the first." (*Lynch* v. *Nurdin,* 12 Q. B. [A. & E., N. S.] 29.) Having accidentally lost possession of a dangerous material of which it had voluntarily taken charge, the defendant owed the duty to others of making reasonable effort to regain control in order to prevent injury. If a person engaged in the transportation of dynamite should knowingly leave a part thereof, accidentally dropped, in a place where it probably would be exploded through accident or the negligence of others, he certainly would be responsible, in the event of an explosion thereof, for injury inflicted on persons who were without fault. The duty of safely keeping the dangerous material would be continuous from the time it was received until it was safely delivered, a duty which could not be escaped by knowingly abandoning the explosive after the accidental loss of its possession. In *Pittsburgh etc. Ry. Co.* v. *Shields,* 47 Ohio St. 387 [21 Am. St. Rep. 840, 8 L. R. A. 464, 24 N. E. 658], the employees of the defendant, wantonly and without any necessity therefor and contrary to the rules of the company, placed some torpedoes in front of the wheels of the caboose in which some women were riding, with the intention to frighten them. When the train moved forward one of the torpedoes failed to explode and it was later picked up by some children, one of whom was injured by its explosion. The court said: "The duty intrusted by the railway company to the conductor in regard to these torpedoes was, not only to use them as signals with the requisite care and caution, but to observe like care and caution in the custody of them when not in use.

The servant's custody of them when not in use was as
much a part of his employment as was the use of them as
signals when required.  In taking them from the place
where they were carried when not in use, and, in mere
caprice, placing them on the track for the purpose of
frightening the ladies, he was not, it is true, within his
employment as to the use of them; but, in so doing, he
violated the duties connected with his employment as the
custodian of them, and thereby made his master liable for
the consequences of his neglect, in the same manner and
to the same extent as if it had been done by the company
itself. . . . Suppose a servant, with others under his con-
trol, employed with a construction train.  He may, for a
time, quit his employment, and, with his men, go off on
affairs of his own.  Whilst thus out of the master's em-
ployment, he may build a fire, which, through his negli-
gence, may consume the property of another; and, in the
meantime, loss of life and property may result from a col-
lision with the train negligently left standing on the track.
Now, whilst, as has been held, the master would not be
liable for the loss resulting from the fire, because the act
was done outside the servant's employment, . . . yet it
is equally certain that for the loss occasioned by the ser-
vant's negligence in leaving the train on the track the
master would be liable in damages, for the plain reason
that in abandoning the custody of the train he was guilty
of negligence in the employment of the master, whilst in
building the fire he was not.''  (See, also, *Wells* v. *Gallagher*,
144 Ala. 363 [113 Am. St. Rep. 650, 3 L. R. A. (N. S.)
759, 39 South. 747].)   While the extent of injury likely to
result from the negligent control of other explosives may
be greater, the probability of injury from gasoline left
under the circumstances here disclosed is not less than is
usual in the case of higher explosives, and the point of
law under discussion has to do with the probability rather
than the extent of injury.  That the same rules apply to
the safekeeping of gasoline as to that of other explosives
is illustrated by the following cases: *Childs* v. *Standard Oil
Co.*, 149 Minn. 166 [182 N. W. 1000]; *Newton* v. *Texas
Co.*, 180 N. C. 561 [105 S. E. 433]; *Leahy* v. *Standard Oil
Co.*, 220 Mass. 90 [107 N. E. 458]; Id., 224 Mass. 352 [112

N. E. 950]; *Watson* v. *Kentucky & Indiana Bridge & R. Co.,* 137 Ky. 619 [126 S. W. 146, 129 S. W. 341]. It seems clear that the findings support the judgment.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.