Charles E. SHIPLEY and Tammy Shipley, Plaintiffs-Appellees,

v.

CITY OF JOHNSON CITY, Tennessee, Defendant-Appellant.

Court of Appeals of Tennessee, Eastern Section.

April 24, 1981.

Application for Permission to Appeal Denied by Supreme Court Aug. 3, 1981.

James H. Epps, III, Johnson City, for defendant-appellant.

Robert S. DeVane, Johnson City, for plaintiffs-appellees.

## OPINION

GODDARD, Judge.

The City of Johnson City, Tennessee, Defendant-Appellant, appeals a judgment rendered in favor of Charles E. Shipley and his wife Tammy Shipley, Plaintiffs-Appellees. The suit was brought under the provisions of the Governmental Tort Liability Act, and the Trial Judge, sitting without a jury, awarded Mr. Shipley $10,000 for his personal injuries and Mrs. Shipley $2500 for her loss of consortium.

The City raises two issues on appeal. First, it insists that the City employee whose negligence occasioned the injury to Mr. Shipley was not acting within the scope of his employment at the time of the accident and, second, that both awards are excessive.

The facts are not in dispute. On June 6, 1978, Mr. Shipley, an employee of the water and sewer department of the City, along with his foreman, Ron Proffitt, and another City employee, Charles Cox, were laying a lateral water line to service a lot on Watauga Road. One of the work crew was absent, which necessitated Mr. Proffitt operating the backhoe to dig a ditch preparatory to laying the line. While so engaged, he struck and damaged a gas line, allowing natural gas to escape. Rupturing a gas line is not an unusual occurrence when laying water and sewer lines, and in accordance with the City policy the gas company was notified so that repairs might be made.

While awaiting the employees of the gas company, Mr. Proffitt told Mr. Shipley to get into the ditch and uncover the line, presumably so the extent of damage and procedure for repair might be more readily apparent to the gas company employees. Responding to his foreman's directive, Mr. Shipley got into the ditch. Mr. Proffitt was at the edge of the ditch overseeing Mr. Shipley's efforts when, inexplicably, he put a cigarette in his mouth, removed a lighter from his pocket, and immediately after an exclamation by Mr. Cox, "Surely to hell you ain't going to light that cigarette," lit his lighter precipitating an explosion which injured both himself and Mr. Shipley.

Mr. Proffitt did not testify, and there is no explanation for his actions, except a quotation attributed to him to the effect that he was sorry and that it was his fault. The most reasonable explanation would seem to be that his actions were involuntary and that he was really not conscious of what he was doing.

However that may be, Mr. Shipley was hospitalized 15 days and was unable to return to work for some four to six weeks after the accident. The City paid his regular wages during the entire period, as well as all medical bills (estimated to be $2000 to $2400) incurred by him.

Dr. Avtar Singh Dhaliwal, a plastic surgeon to whom Mr. Shipley was referred for evaluation, gave the following testimony regarding the extent and permanency of his injuries:

Q. Dr. Dhaliwal, did you have an occasion to treat a Mr. Charles Shipley back in June of '79?

A. I did have consultation with Charles Shipley on June 6, 1979.

Q. As part of that consultation did you obtain a history from him?

A. Yes, I did obtain a history from him that he was working in the ditch for Johnson City City and a natural gas explosion happened. He was treated in Memorial Hospital for 13 days and he remained under treatment with Dr. Battle, Wayne Battle during that period.

Q. What type of burns did Mr. Shipley have as a result of this explosion?

A. The initial treatment was done by Dr. Wayne Battle and according to the patient's version it was superficial second degree burns and first degree burns.

Q. How does a second degree burn compare to a first degree burn?

A. The first degree burn is where the skin, the superficial cells of the skin are red and very sensitive to touch and painful. The second degree burns are further divided into two categories. The superficial type is where the blisters are formed and the skin damage is a little more than the first degree and the areas of redness are more; and the deep second degree burn's where the blisters are a lot more increased in size and the redness is diminished. The skin appendages are more damaged and the sensitivity is reduced.

Q. Very well. Is this a painful type injury? Is that a fair statement to make?

A. It is very, it is a very painful type of burns, it is because the nerve endings are exposed and the patient does have a lot of pain.

Q. Is Mr. Shipley showing the signs of this burn in any way at this time?

A. At this time he has the scars on his left calf, his back, midportion of the chest, areas of sacrum, both upper extremities, particularly on the outer aspects of the upper extremities and on the lower surface of the palmar surface side of his right wrist.

Q. Okay. Is it a fair statement to say that Mr. Shipley's scars are permanent in nature?

A. Yes, the scars are permanent in nature.

Q. What if anything can be done to alleviate this?

A. Nothing.

In addition, Mr. Shipley testified that as of the date of trial, almost two years after the accident, his back and right arm still bother him when he lifts, and when the burned skin stretches, "It feels like needles."

Mrs. Shipley testified that she stayed with her husband day and night while he was in the hospital, sleeping in a chair by his bed, and that after he was discharged, she had to change his bandages, give him baths and change the sheets every day because he was losing fluids. They were unable to have sexual intercourse for a period of two to three months. Because of the attention her husband required, it was necessary that they hire a baby sitter which cost $200 to $300, and in addition she lost wages of some $530.

Before addressing the first and, in our view, principal issue for review, we point out that the parties in the trial of the case, as well as on appeal, considered that Mr. Shipley, in pursuing this claim under the Governmental Tort Liability Act, was entitled to be treated as a non-employee third party and the defenses ordinarily available to an employer where neither he nor the employee are subject to the Worker's Compensation Act were not advanced below or insisted upon here. Consequently, our review will be consistent with the theory of trial below.

There is no dearth of authority regarding the principal question raised by this appeal, viz: Is a master liable for injury caused by a fire which was started as a result of his servant's negligence in smoking?

Although there are certain exceptions, an annotation at 20 A.L.R.3d at 893 recognizes with appropriate citations three general rules which have been enunciated by the various appellate decisions:

In a number of cases the courts have taken the view that under the particular fact situation presented a master would be liable for damage resulting from fires caused by a servant's smoking, the view apparently being based on the idea that the servant had merely coupled an act for

his personal pleasure with the duties for his employer and if such act rendered the performance of his duties negligent the master should respond for the damage caused thereby.

. . . .

■ In the following cases the view was taken that under the particular fact situation presented, smoking by a servant ostensibly engaged in his master's work was not an act within the scope of the servant's employment so as to render the master liable for fire allegedly caused thereby, the rationale evidently being that the servant had turned aside from his master's work and was engaged in a purely personal matter or frolic of his own.

. . . .

■ The view appears to have been taken in some cases, especially those involving a servant working around inflammable objects, that if a servant's smoking on the job creates an unreasonable risk of danger, the master should be liable for damages caused thereby, the rationale apparently being that the servant's work requires the undertaking of special precautions such as not smoking and should the servant smoke, it amounts to doing the work in an improper way, for which the master is liable.

The Restatement of Agency has also addressed the problem, as shown by the following comment and illustrations found under § 235:

*Comment:*

*d. Agent negligent as custodian.* Although an act is not done for the purposes of the master and hence is not within the scope of the employment, if it accompanies authorized conduct its performance may cause the servant to be negligent in the manner of doing that which is within the scope of the employment. The chief instances occur where the servant is the custodian of land or chattels which he is controlling on account of the master.

*Illustrations:*

5. A is delivering gasoline for P. He lights his pipe and negligently throws the blazing match into a pool of gasoline which has dripped upon the ground during the delivery and which ignites. For the resulting harm, P is subject to liability.

6. A, while driving as chauffeur for P, negligently throws his lighted cigarette from the window of the car into a passing load of hay, not intending to ignite it, but careless as to where the cigarette falls. P is not liable for this act.

Tennessee courts have wrestled with the problem in four separate opinions involving three different cases. In the first, *Mack v. Hugger Bros. Const. Co.*, 153 Tenn. 260, 283 S.W. 448 (1925), the original plaintiff, a sub-contractor, sued the defendant, a contractor, for failure to pay the balance owed on a contract. The defendant answered and filed a counter-suit, seeking recoupment in damages for loss occasioned by the negligence of the plaintiff's employee while performing the contract which was the subject of the original action. The cross-bill averred that the performance of the contract, which was one to lay a floor, required the use of inflammable matter, and that one of the plaintiff's employees negligently threw a lighted match upon the floor which had been saturated with the inflammable fluid, producing a fire which destroyed the building being erected by the defendant contractor. The original plaintiff filed a demurrer to the cross-action, contending that it, in reality, sought a set-off which was not proper when the damages were unliquidated. The chancellor overruled the demurrer but allowed a discretionary appeal. The Supreme Court held the cross-action sought recoupment which does lie for unliquidated damages, and went on to say (153 Tenn. at 266, 283 S.W. at 450):

The work required the use of inflammable fluid in laying the floors which the complainant agreed to lay. The defendant had a right to reasonably expect that in laying the floors, and while using the inflammable material, the complainant, or the foreman to whom complainant delegated the duty of executing the contract, would exercise reasonable care in the use of fire or matches, so as not to

render valueless by a conflagration the work that was under construction by both parties.

It would appear from the foregoing that Tennessee—at least for cases involving hazardous materials—was adopting the third rule above mentioned. However, some doubt is cast upon this conclusion by this Court's opinion rendered in the same case, upon a second appeal following a trial on the merits. In that opinion, found at 10 Tenn.App. 402, this Court sustained a recoupment, even in the face of a scope of employment defense, but in doing so indicated that a judgment against the master was justified, not upon the theory of *respondeat superior*, but rather upon the *alter ego* theory:

> As we understand the opinion of the Supreme Court on the former appeal of this case . . ., the question which appellant now seeks to make concerning the "scope of employment" of Gengenback, is settled adversely to appellant by that opinion. We do not base this conclusion upon the fact that one of the five grounds of complainant's demurrer to the cross-bill of defendant asserted, in effect, that the alleged negligent act of Gengenback was not within the scope of his employment; but upon what seems to us an unavoidable inference from the opinion that, in the performance of the contract, Gengenback, complainant's "foreman," was complainant's alter ego.

In the next case, *Kelly v. Louisiana Oil Refining Co.*, 167 Tenn. 101, 66 S.W.2d 997 (1934), the plaintiff was an employee of a merchant who bought and sold cotton. The defendant's servant, who smoked and whose habit was known to the employer, was delivering gas and oil. After delivery of the goods he entered the merchant's store to telephone his employer. While using the telephone he struck a match to light a cigarette and carelessly threw the match against the plaintiff, setting cotton lint which covered his clothing afire and severely injuring him. Under these facts the Supreme Court held a demurrer was properly sustained and laid emphasis on the fact that the employer's knowledge of the employee's smoking was of no particular consequence since the damage was not related to the hazardous materials he was delivering (167 Tenn. at 105, 66 S.W.2d at 999):

> Nor is the plaintiff's case aided by the averment that the defendant knew its servant was a habitual smoker. This averment might have affected the result if the accident had occurred while the servant was in the act of hauling and delivering the inflammable oil and gas he was employed to deliver, as in *Feeney v. Standard Oil Company*, the California case cited above [58 Cal.App. 587, 209 P. 85], but the duty in which the servant was engaged, when he threw the lighted match on plaintiff, was the simple and innocuous act of using a telephone, which he might have found it necessary to do if he had been delivering groceries instead of gasoline, and which contributed in no way to the accident.

In the last case, *Shuck v. Carney*, 22 Tenn.App. 125, 118 S.W.2d 896 (1937), a garage employee, who was called to assist in removing the plaintiff's vehicle from a ditch, lit a cigarette and dropped the match on the ground which had been saturated with gasoline that had spilled out of the tank of the car. The resulting fire damaged the plaintiff's automobile severely. The Supreme Court reversed a judgment for the plaintiff and dismissed the suit. It appears the Court's action turned, at least in part, upon the fact that the employer lacked knowledge of the leaking gasoline (22 Tenn.App. at 130, 118 S.W.2d at 899):

> We do not think that this act of Reynolds in striking the match under the circumstances constituted any part, nor was it at all related to the work for which he had been sent to perform by his employer. The negligent act was alone the act of Reynolds and not in the performance of any duty of his employer. The employer could not have anticipated that there would be spilled gasoline on the ground around the wrecked automobile, nor could he have anticipated that Reynolds would strike a match and drop it onto the ground igniting the gasoline.

We think the instant case may be distinguished both from *Kelly* and *Shuck* in that in the former the negligence and injury

were unrelated to the hazardous material being delivered, and in the latter the employer had no reason to know that gasoline had leaked upon the ground. In the present case the injury was directly related to the hazard of a broken gas line, and the City, as shown by its answer to the complaint and by the policy it adopted, knew that such hazards could be encountered from time to time.

*Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corporation*, 49 F.2d 146 (1931), we believe lays down the rule applicable to the facts of this case. In that case Judge McDermott, speaking for the Tenth Circuit Court of Appeals, first recognizes the conflict and then adopts the rule (at page 150):

> There is a conflict of authority upon the point, but on principle the rule does not seem to be elusive. Workmen are not employed to smoke, any more than chauffeurs are employed to drive their cars on sidewalks. Smoking is a pastime of the employee, but one which employers know is a common habit of workmen. Under ordinary circumstances, it is not an act accompanied with danger to others. We have no quarrel with cases that decline to hold a master where a servant has stepped aside from his employment and has lighted a cigarette in surroundings where it could not reasonably be anticipated that damage would follow that act. [Citations omitted.] But the law is otherwise where the master sends out servants to do work, the nature of which is such that the master knows that damage is apt to occur if the servant smokes or strikes a match. In such a case the duty devolves upon the master to see to it that his servants exercise due care under the existing circumstances. [Citations omitted.]

▮ The City was aware that broken gas lines would be encountered or caused in laying water lines and that this presented a potentially dangerous condition. The City even established procedures to be followed in such an event. It is equally clear, upon reflection, that lighting a cigarette near a leaking gas line could indeed be hazardous to one's health. The injury was a direct, foreseeable and natural consequence of the combination of the type of work being performed by the foreman in the scope of his employment and his negligent act of lighting his lighter. The City was properly held liable for the damages incurred.

▮ As to the second issue, excessiveness of award, in light of the injuries incurred by Mr. Shipley, considering their severity and permanency, the degree of pain he had to endure as a result, the length of time it was necessary for him to be absent from his work, and the amount of money it was necessary to expend to treat his injury, we do not believe the sum of $10,000 is excessive, nor do we believe, in light of Mr. Shipley's injuries and disabilities and the deprivations endured by Mrs. Shipley, that her award is excessive either.

For the foregoing reasons, the issues on appeal are found adversely to the City and the Trial Court is affirmed. The cause is remanded to the Circuit Court for Washington County for collection of the judgment and costs below. Costs of appeal are adjudged against the City and its sureties.

PARROTT, P. J., and FRANKS, J., concur.